IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL RAY STEMPLE, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-19-1117 |
| WARDEN RICHARD DOVEY, WARDEN JOHN WOLFE, and WARDEN LAURA ARMSTEAD,[1] | * * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

In this Memorandum Opinion, the court will consider two Motions to Dismiss, or in the Alternative, for Summary Judgment, the first filed by John Wolfe, former Warden of the Jessup Correctional Institution ("JCI") (ECF 25) and the second filed by Laura Armstead, Warden at Patuxent Institution ("Patuxent") and Richard Dovey, former Warden at the Maryland Correctional Training Center ("MCTC") (ECF 26). Plaintiff Michael Ray Stemple, who is incarcerated at Patuxent and is self-represented in this proceeding, filed a response in opposition to defendants' dispositive motions. ECF 29. Stemple's Motion for Leave to File an Amended Complaint (ECF 34) and his Motion to Appoint Counsel (ECF 38) will also be considered.

**I.      Background**

Stemple initiated this action on April 11, 2019, by filing a paper titled "Motion/Petition for Civil Suite [sic] on Medical and Department of Corrections Officers and Inmates on Ground of Safety, Medical Civil Rights Denied by Warden of Corrections." ECF 1. On June 4, 2019, Stemple filed an amended complaint as directed by the court to clarify his intentions and he named the "Warden at MCTC" as a defendant. ECF 2, 3. Stemple alleged that on April 12, 2018, he was attacked by other

---

[1] The Clerk shall amend the docket to reflect the first name of each defendant.

inmates while he was in administrative segregation at MCTC and had been assaulted three times over the course of the previous 13 months. He sought proper medical care, damages, and for his assailants to be held responsible. ECF 3 at 3.

On July 16, 2019, the court directed counsel to provide an expedited response to address Stemple's claims he was in danger. ECF 5. On August 13, 2019, counsel provided verified information, indicating that Stemple had been transferred from MCTC to Patuxent where he reported that he felt safe and did not have reason to fear placement in the general population. ECF 8-1 at 3. Based on this information, on May 20, 2020, the court denied preliminary injunctive relief, and granted Stemple twenty-eight days to provide additional information if he wished to pursue his claim about the assaults, state the identities of the individuals he seeks to hold liable, and explain how his medical care was inadequate. ECF 9, 10.

On June 12, 2020, Stemple submitted a filing with additional allegations. Fairly construed, Stemple alleged an Eighth Amendment failure to protect claim on the grounds that: (1) on May 21, 2020, he was assaulted at Patuxent by his cellmate James Boisseau, went to the hospital where he received eight staples to the back of his head, and afterwards was placed on administrative segregation; (2) on May 5, 2017, he was stabbed at JCI by his cellmate Calvin Carter; (3) on April 12, 2018, he required twelve stitches after members of the prison gang Dead Man Incorporated (DMI) cut his throat at MCTC. Additionally, he alleges that (4) he is not receiving medication for his injuries; and (5) his clothing has been lost or stolen during his assignment to administrative segregation. ECF 11-2 at 2-6. Although Stemple's filing did not fully comply with the court's July 16, 2019 order, the pattern of assaults he alleged was concerning. To comport with what appeared to be Stemple's intention to hold the wardens of these facilities responsible, and in recognition of his status as a self-represented plaintiff, the court directed the Clerk to add the wardens of JCI and Patuxent Institution as defendants. ECF 12.

**II.     Motion to Amend and to Appoint Counsel**

On February 25, 2021, after defendants filed their dispositive motions (ECF 25, 26), Stemple filed a Motion to Amend the Complaint to add a claim for transcripts lost after his cell was searched at Patuxent. ECF 33, 34. Defendants oppose the motion, arguing that Stemple will not be prejudiced by denial of the motion and accurately noting that he has raised the identical claim in a separate suit pending in this court, *Stemple v. Warden* [of Patuxent Institution], Civil Action No. CCB-20-3309 (D. Md). In *Stemple v. Warden,* Stemple claims his legal paperwork was taken from him and was not returned after his cell was searched at Patuxent on August 14, 2020. *Id*. He sought the return of transcripts from his criminal proceedings and documents related to his efforts to reopening post conviction proceedings. *Id*.[2] Additionally, defendants assert they will be prejudiced by the addition of the claim because this case is ripe for resolution on the pending dispositive motions. ECF 36.

Rule 15 of the Federal Rules of Civil Procedure that a party "may amend its pleading once as a matter of course" before the opposing party files a responsive pleading. Fed. R. Civ. P. 15(a)(1). Thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 provides that leave to amend should be "freely give[n] ... when justice so requires." *Id*.; *see also Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 227-28 (4th Cir. 2019). A motion to amend should be denied when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. *See Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019). A proposed amendment is prejudicial to the opposing party if it is belated and would change the nature of the litigation. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 604 (4th Cir. 2010).

---

[2] On February 24, 2021, the court granted Stemple twenty-eight days to supplement the complaint to identify a nonfrivolous or arguable claim frustrated by the confiscation of documents to show actual injury in order to support an access to the courts claim under the First Amendment. *Stemple v Warden,* CCB-20-3309. To date, Stemple has not provided this information.

Here, Stemple attempts to introduce a new claim in the instant case that he has raised in a separate case before the court. The claim asserted is belated and, if accepted, would require defendants to address the claim in two separate cases. Defendants have demonstrated prejudice will result if Stemple is permitted to amend the complaint, and the motion shall be denied.

The court will also deny Stemple's motion to appoint counsel.[3] There is no absolute right to appointment of counsel in civil cases, and an indigent claimant must present "exceptional circumstances" to invoke this court's discretionary power to request counsel be appointed. *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (quoting *Gordon v. Leeke*, 574 F.2d 1147, 1173 (4th Cir. 1978), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). As explained in more detail herein, Stemple's claims will be dismissed. Accordingly, he does not have a colorable claim which would warrant a request for counsel. The motion will be denied.

---

[3] This motion is captioned as a "Motion on Facts of Civil Action" but the court construes it as one for appointment of counsel since Stemple asks the court to appoint counsel to help him state a claim for injunctive relief and to uncover additional facts which may be relevant to his case. *See* ECF 38 at 2.

### III. Standard of Review

#### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.,* 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor and City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In deciding a motion to dismiss, the court may consider matters outside the pleadings. A court need not convert a motion to dismiss into one for summary judgment, if it is simply taking judicial notice of facts from the plaintiff's prior judicial proceeding, over which there are no disputed issues of material fact. *See Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000).

5

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulamy v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id*. (citing *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011) (citation omitted)). Therefore "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam), and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 568-70 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

The court also is mindful that because Stemple is self-represented his filings are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

IV.  Discussion

A.  Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prison*s, 849 F.3d 202, 209-11 (4th Cir. 2017). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his [or her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511

7

U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (internal quotation omitted).

Though Stemple seeks "proper medical care," he alleges no facts supporting his claim that the medical care he has received was improper. ECF 3 at 3; 29, 29-2. Among the exhibits filed with his opposition, Stemple has included a letter dated November 13, 2017, written to Warden Dovey complaining that he was not provided his pain medications for back and head pain. In the same letter, however, he acknowledges receiving pain medications at a different dosage at MCTC and receiving medications at JCI. ECF 29-2 at 5. In an administrative remedy procedure request (ARP) dated August 1, 2017, MCTC 1185-18, Warden Dovey responded:

> An investigation was conducted and upon review the patient was seen by provider 6 weeks prior and voiced no clinical changes when he saw the nurse. Plan of care is in place. Patient is being medicated with Baclofen and Fioricet for pain. Cymbalta has not been reordered since it was discontinued in January.

*Id.* at 11. Stemple's exhibits also indicate that he is being assisted by the Prisoner Rights Information System of Maryland, Inc. (PRISM) in pursing his medical complaints with the private contractual medical provider at Patuxent, Corizon Health Services. ECF 34. At Patuxent, Stemple filed an ARP PATX0674-19 complaining that he was not provided his medication on July 18, 2019. On October 15, 2019, Warden Armstead responded to his claim and found his complaint meritorious after investigation; corrective action was taken to address the issue. ECF 29-3 at 3.

Stemple presents no specific allegations against defendants Dovey, Wolfe, or Armstead, much less does he assert that they were personally involved in decisions about his medical care. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (personal participation required for liability). Nor does Stemple assert that defendants acted to hinder or impede his medical care. Even if a constitutional violation were shown, Dovey's signing of one ARP response would not be enough to establish

8

participation because mere receipt and processing of an ARP without more, is insufficient to impose liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (finding allegation that warden "rubber-stamped" grievances was not enough to establish personal participation). Defendants, none of whom is identified as a medical provider, are entitled to rely on the medical judgment and expertise of medical personnel regarding the course of treatment necessary for inmates. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th. Cir. 1995); *Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir. 2002) (noting prison officials cannot substitute their judgment for a medical professional's on issues of treatment). Stemple has not stated a claim of constitutionally inadequate medical care against defendants, and this claim will be dismissed.

### B. Due Process Claim

In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 540 (1981), overruled on other grounds by *Daniels v. Williams,* 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland through the Maryland Tort Claims Act and Inmate Grievance Office constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). Absent any allegation that the property at issue here impinged on Stemple's protected constitutional rights, the loss or destruction of his property does not state a constitutional claim. The due process claim will be dismissed.

### C. Failure to Protect Claim Against Warden Wolfe

Defendant John Wolfe, who was warden at the time of Stemple's May 5, 2017 stabbing at JCI, raises *res judicata* and collateral estoppel[4] as affirmative defenses in support of his dispositive

---

[4] Under principles of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel provides that issues of fact or law that have been conclusively determined in a previous lawsuit cannot be litigated in subsequent lawsuits brought by the same party. *In re Microsoft Corp. Antitrust Litig.,* 355 F.3d 322, 326 (4th Cir. 2004). Collateral estoppel applies if (l) the issue "is identical to the one previously litigated;" (2) the issue "was actually resolved in the prior proceeding;" (3) the issue "was critical

9

motion, arguing that Stemple's claim is barred because his claim was raised or could have been litigated in his previously filed and adjudicated case, *Stemple v. Gelsinger, et al.* Civil Action No. CCB-17-1539, 2018 WL 4518022 (D. Md. Sept. 28, 2018). In his opposition, Stemple offers no argument or exhibits in dispute.

*Res judicata* is a legal doctrine that promotes judicial efficiency and finality of decision. *In re Microsoft Corp. Antitrust Litig.*, 335 F.3d 322, 325 (4th Cir. 2004). Where there has been a final judgment on the merits in a prior suit, an identity of the cause of action in both the earlier and the later suit, and an identity of parties or their privies in the two suits, *res judicata* is established. *See Pension Ben. Guar. Corp. v. Beverley,* 404 F.3d 243, 248 (4th Cir. 2005) (quoting *Jones v. S.E.C.,* 115 F.3d 1173, 1178 (4th Cir. 1997)). *Res judicata* precludes assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986). In addition, "'[n]ot only does *res judicata* bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*. (quoting *Peugeot Motors of America, Inc. v. E. Auto Distrib., Inc*., 892 F.2d 355, 359 (4th Cir. 1989).

In *Stemple v. Gelsinger,* Stemple's claims included "the Warden at JCI" and other correctional staff failed to protect him from harm when he was assaulted at JCI on May 21, 2017, by his cellmate Calvin Carter. 2018 WL 4518022, at *4, *13. Stemple asserted that members of Dead Men Incorporated (DMI) confused him for a member of the Aryan Brotherhood, another prison gang, and that he had told Sergeant Mooney at JCI three times that he had "issues" with his cellmate Carter,

---

and necessary to the judgment in the prior proceeding"; (4) the prior judgment is final and valid; and (5) the party "to be foreclosed by the prior resolution of the issue" had "a full and fair opportunity to litigate the issue" in the prior proceeding. *Id.*

10

whom Stemple claimed was a friend of a DMI inmate killed at JCI. *Id*. at *2. Stemple alleged that because he had been confused as an Aryan Brotherhood gang member at a prior institution, the DMI gang was likely to attack him. *Id.*; *see also* ECF 1 at 1-3, 5. In support of their Motion to Dismiss or for Summary Judgment, defendants, including Warden Dovey, provided Sergeant Mooney's declaration that he never had any conversations with Stemple. *Id*. at *4. Further, verified exhibits filed by defendants demonstrated that Calvin Carter was not a member of DMI or affiliated with any prison gang. *Id*. Stemple provided no declaration or other information in dispute. *Id*. The court found that Stemple did not exhaust his administrative remedies before filing his claim, and even had he done so, his claims were unavailing because the claims relied on a theory of respondeat superior liability and because Warden Dovey was entitled to eleventh amendment immunity to a claim for damages against him in his official capacity. *Id.* at *11-12. Further, the court determined: "Insofar as Stemple intends to hold the Wardens of MCI-H, WCI, JCI, and MCTC culpable, beyond naming them in the complaint, he makes no specific allegations against these individuals or suggests facts to find them culpable based on principles of supervisory liability." Id. at *13.

      First, Wolfe argues *res judicata* applies because the parties are the same in both cases: Stemple is plaintiff and Wolfe is a defendant in both cases. Second, the failure to protect claim is the same and was resolved on the merits in favor of Wolfe. Finally, Wolfe argues there was a final judgment on the merits in favor of him as JCI Warden, based on allegations, arguments, and evidence in *Stemple v. Gelsinger*. Wolfe notes the court's determination was based on "the core allegations common to both the prior and present lawsuit." ECF 25-1 at 8. Additionally, Wolfe contends that since this court concluded in *Stemple v. Gelsinger* that none of the individual JCI correctional officer defendants was liable for failing to protect Stemple, he cannot be held culpable based on principles of supervisory liability in the instant matter. 2018 WL 4518022 at *13-14. The crux of Stemple's claim in this and

the earlier case are the same.  For these reasons, the court finds principles of *res judicata* apply.  The claims against Warden Wolfe are barred and will be dismissed.[5]

### D.  Claims against Warden Dovey and Warden Armstead

Stemple claims that Wardens Dovey and Armstead failed to protect him from harm in violation of the Eighth Amendment when he was stabbed by another inmate at MCTC and assaulted at Patuxent.  Armstead and Dovey counter that Stemple's claims have not been properly presented through the administrative remedy procedure and must be dismissed pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e which provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).[6]

---

[5] Having determined the claims are barred by the doctrine of *res judicata*, the court does not reach Wolfe's collateral estoppel defense.  The court notes, however, that in *Stemple v. Geisinger*, CCB-17-1539, Stemple was accorded a full and fair opportunity to litigate the issue.  Stemple filed some 17 documents, including as relevant to the claims about JCI, a complaint (ECF 1), a supplemental complaint (ECF 3), a complaint consolidated from CCB-17-1782 (ECF 9), and an opposition to defendants' dispositive motion (ECF 27).  The court considered these filings along with defendants' dispositive motion (ECF 23) and reply (ECF 30) before entering final judgment in *Stemple v. Geisinger*, CCB-17-1539. *See* ECF 49, 50.

[6] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate[.]'"  *Massey v. Galley*, 392 Md. 634, 646 (2006) (citation omitted).  Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'"  *Id*. at 651 (citation omitted).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219. It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 286 F. Supp. 2d at 530 (collecting cases).

DPSCS has an established administrative remedy procedure for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") §§ 10-201 *et seq.*; Md. Code Regs. 12.07.01B(1). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Armstead and Dovey have provided verified exhibits showing that Stemple did not present or exhaust claims alleging they or anyone else failed to protect him from harm based on incidents at MCTC or Patuxent before filing suit. *See* ECF 26-15, Turner Decl. ¶ 3. Notably, Stemple does not

13

dispute this information or assert that the administrative remedy process was unavailable to him. Accordingly, the court will dismiss the failure to protect claims against Dovey and Armstead.

## V. Conclusion

For the foregoing reasons, Stemple's Motion to Amend the Complaint (ECF 34) and to Appoint Counsel (ECF 38) will be denied, Warden Wolfe's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 25) will be granted, and Warden Dovey and Warden Armstead's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 26) will be granted.  A separate order follows.


  __5/4/21_____                       _____/S/_____
Date                                     Catherine C. Blake
                                         United States District Judge

14